

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00398-CV

**CITY OF SAN ANTONIO**,
Appellant

v.

Tarik **ESQUERRA**,
Appellee

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CI12980
Honorable Christine Vasquez Hortick, Judge Presiding

Opinion by:     H. Todd McCray, Justice

Sitting:        Irene Rios, Justice
                H. Todd McCray, Justice
                Velia J. Meza, Justice

Delivered and Filed: June 30, 2026

AFFIRMED

The City of San Antonio (the "City") brings this interlocutory appeal from an order denying in part its combined traditional and no-evidence motion for summary judgment asserting governmental immunity from Tarik Esquerra's claims under the Texas Commission on Human Rights Act ("TCHRA"). *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). On June 18, 2025, the trial court granted the City summary judgment on Esquerra's national-origin and disability discrimination claims and denied it on the race-discrimination, sex-discrimination, hostile-work-

environment, and retaliation claims. All of Esquerra's claims other than the race-discrimination, sex-discrimination, hostile work environment, and retaliation claims were dismissed with prejudice. Only the denial is before us. We affirm.

## I. BACKGROUND

Esquerra worked for the City as an Assistant Solid Waste Manager. On July 2, 2021, the Director of Solid Waste Management, David Newman, terminated him by letter. The City's stated reasons included attendance-policy lapses, personal use of a City vehicle and internet, and procuring labor from a subordinate. Esquerra alleges that his supervisor, Ray Castillo, the Solid Waste Department manager, subjected him to repeated sexual conduct: vulgar sexual remarks, simulated humping, crotch gestures, the circulation of sexually explicit images, and physical touching. Much of the alleged inappropriate conduct, Esquerra says, occurred in front of other employees and Castillo's own superiors, including the department director. He alleges he opposed that conduct and complained internally roughly ten days before he was forced to resign; that he was treated less favorably than employees outside his protected classes who committed comparable violations and were not terminated; and that he was replaced by a female employee, Veronica Guitron. A 2023 investigation by the City's Office of Municipal Integrity substantiated an allegation that another employee, Vance Sheppard, had falsified four Notices of Leave. Those notices were approved by Castillo and two other supervisors, Assistant Solid Waste Manager Claudio Solis and Collection Route Supervisor Ruben Montes; Esquerra signed none of them. Esquerra filed a charge with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 451-2022-00539, dual-filed with the Texas Workforce Commission ("TWC") and received notice of his right to file a civil action. After his termination he applied for numerous City positions but was never interviewed or rehired.

On appeal, the City presents five issues. First, it contends Esquerra failed to exhaust his administrative remedies, which it asserts is a jurisdictional prerequisite to the TCHRA's waiver of immunity, because his charge was neither a sworn nor an otherwise compliant complaint filed within the limitations period. Second, it contends Esquerra produced no evidence of pretext on his race-discrimination claim. Third, it contends the same as to his sex-discrimination claim. Fourth, it contends the conduct underlying the hostile-work-environment claim was not sufficiently severe or pervasive to alter the conditions of his employment and that the City conclusively established its affirmative defense, namely that it exercised reasonable care to prevent and correct harassment and that Esquerra unreasonably failed to use the City's complaint procedure. Fifth, it contends Esquerra neither engaged in protected activity nor showed but-for causation on his retaliation claim.

The trial court resolved the City's motion in two June 18, 2025 orders. It granted the City summary judgment on Esquerra's national-origin and disability claims and denied summary judgment on his race-discrimination, sex-discrimination, hostile-work-environment, and retaliation claims. In a companion order, the court dismissed with prejudice all of Esquerra's other claims, including the constitutional claims he had nonsuited and the intentional-tort claims he had previously withdrawn. Those four denied claims remain, and only the partial denial of the City's immunity is before us.

## II.    ANALYSIS

### A.  Standard of Review

We review the denial of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Subject-matter jurisdiction is a question of law, also reviewed de novo. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A

governmental unit may assert immunity by summary judgment, and the denial of such a motion is immediately appealable. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 549-50 (Tex. 2019) (recognizing that immunity "may be raised by a plea to the jurisdiction, as well as by other procedural vehicles, such as a motion for summary judgment") (quoting *State v. Lueck*, 290 S.W.3d 876, 884 (Tex. 2009)); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018) ("Immunity from suit may be asserted through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment.").

The City moved on both traditional and no-evidence summary judgment grounds, and the two standards are distinct. On the traditional ground, the City, as the movant, bears the burden throughout; it must conclusively negate at least one element of a claim or conclusively establish every element of an affirmative defense. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) ("To prevail on a motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."); *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982) (a matter is conclusively established when "there is no room for ordinary minds to differ as to the conclusion to be drawn from it"). On a traditional motion the City's burden of persuasion does not shift; the court takes Esquerra's evidence as true and indulges every reasonable inference in his favor. *Cathey*, 900 S.W.2d at 341. On the no-evidence ground, the City identifies elements it contends lack support, and the burden shifts to Esquerra to produce more than a scintilla of probative evidence raising a genuine fact issue on each challenged element. TEX. R. CIV. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (a fact issue exists "if more than a scintilla of evidence establishing the existence of the challenged element is produced"); *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (more

than a scintilla exists where the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions") (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Less than a scintilla is evidence "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Ridgway*, 135 S.W.3d at 601. The City need not disprove anything under this prong. Under either standard, the evidence and every reasonable inference run in Esquerra's favor, and the movant's burden is correspondingly high. A single genuine fact issue on any challenged element means immunity was not established as a matter of law and the denial stands.

Governmental immunity bars TCHRA suits unless waived. The statute waives immunity only where the plaintiff alleges a violation within its terms and, because the jurisdictional inquiry here implicates the merits, raises a fact issue on the statutory elements. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012) (the Legislature "has waived immunity only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder"); *see also Clark*, 544 S.W.3d at 770. Where intent is at issue and the evidence is circumstantial, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), structures the analysis: a prima facie case, the employer's legitimate non-discriminatory reason, then a fact issue on pretext. *Garcia*, 372 S.W.3d at 642. The ultimate question at this stage is whether a fact issue exists, not who would prevail at trial. *Id*.

## B. Administrative Exhaustion

A TCHRA complaint must be in writing and made under oath. TEX. LAB. CODE § 21.201(b). It must be filed not later than the 180th day after the alleged unlawful employment practice, except that a complaint alleging sexual harassment must be filed not later than the 300th day. *Id.* § 21.202(a), (a-1). A complaint, however, "may be amended to cure technical defects or

omissions, including a failure to verify the complaint," and an amendment alleging additional acts relates back to the date of the original complaint. *Id.* § 21.201(e), (f).

The Texas Workforce Commission's filing regulation in effect when Esquerra signed and amended his charge governs how a complaint is made. 40 Tex. Admin. Code § 819.41. That provision directs that a person claiming to be aggrieved by an unlawful employment practice may file a complaint with the Commission's civil rights division, prescribes the content and signature requirements for the complaint, and provides for amendment.

The verification requirement may be satisfied by an unsworn declaration in lieu of a sworn one. TEX. CIV. PRAC. & REM. CODE § 132.001. The declaration must be in writing and subscribed by the person making it as true under penalty of perjury, and it must include the declarant's date of birth and the place of execution. *Id.* § 132.001(c), (d).

A timely complaint is a mandatory statutory prerequisite to suit against a governmental unit, and the prerequisite is jurisdictional. *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 511, 514-15 (Tex. 2012) (the 2005 amendment "evinces the Legislature's intent that all statutory prerequisites are now jurisdictional requirements as to governmental entities"); *see also* TEX. GOV'T CODE § 311.034. But the TCHRA's complaint requirements are remedial, and the Act is construed liberally to effectuate its purpose. *See NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 146 (Tex. 1999). A charge filed with the EEOC by a Texas employee is treated as contemporaneously filed with the Commission under the agencies' work-sharing arrangement. *Tex. Tech Univ. v. Finley*, 223 S.W.3d 510, 513-14 (Tex. App.—Amarillo 2006, no pet.) (noting that, under the 1998 work sharing agreement, complaints filed with the EEOC are "automatically dually filed with the TWC–CRD upon receipt").

The City asserts that it has not waived immunity because Esquerra failed to satisfy the statutory prerequisites to waiver. According to the City, Esquerra's signed TWC charges failed to satisfy the requirements under sections 21.201 and 132.001. It is undisputed that the charge is not notarized, so the question is whether the charge qualifies as an unsworn declaration under section 132.001. The City contends it does not, because the charge omits Esquerra's date of birth and the place of execution, and that the omissions render it a non-compliant complaint as a matter of law, with the consequence that no compliant complaint was filed within the limitations window and the suit is barred. Esquerra responds that the TCHRA is construed liberally; that the charge was accepted, investigated, and produced a right-to-sue notice; that he declared the charge true under penalty of perjury; and that the EEOC/TWC work-sharing arrangement deems the charge filed with both agencies.

The City raised exhaustion of administrative remedies on the traditional ground, so it must conclusively establish non-exhaustion of those remedies. It has not. Section 132.001(c) and (d) do require the declarant's date of birth and the place of execution, and the charge omits both. But section 21.201(e) expressly permits a complaint to be amended to cure "a failure to verify the complaint." Tex. Lab. Code § 21.201(e). Because the Legislature made a failure to verify curable, the verification defect the City identifies did not defeat the statutory prerequisite as a matter of law. The charge that Esquerra signed under penalty of perjury that was accepted, investigated, and acted upon by the Commission, satisfies the statutory prerequisite. The City did not conclusively negate exhaustion of administrative remedies, and we affirm the denial as to the charge-validity ground.

The timeliness of the harassment conduct is narrower. The City concedes the race, sex, and retaliation claims are timely. For the harassment, the 300-day window reaches conduct on or after

the effective date of the amendment that created it; the 180-day window governs the earlier conduct, which Esquerra can reach only through a continuing-violation theory. *See* TEX. LAB. CODE § 21.202(a-1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("[t]he entire time period of the hostile environment may be considered by a court for the purposes of determining liability"); *Santi v. Univ. of Tex. Health Sci. Ctr.*, 312 S.W.3d 800, 805-06 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (recognizing that "a claim of a hostile work environment is a continuing violation," unlike discrete acts such as "termination, failure to promote, denial of transfer, or refusal to hire") (quoting *Morgan*, 536 U.S. at 114). That gating question is addressed with the hostile-work-environment claim.

### C. Race Discrimination

The race discrimination claim proceeds under *McDonnell Douglas*. The City concedes a prima facie case for the sake of argument and articulates legitimate, non-discriminatory reasons: attendance-policy lapses, personal use of a City vehicle and internet, and procuring labor from a subordinate. Because the City moved on the no-evidence ground as to pretext, Esquerra must produce more than a scintilla of probative evidence that the City's stated reason was pretext for discrimination. *McNeel v. Citation Oil & Gas Corp.*, 526 S.W.3d 750, 761 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A plaintiff's subjective belief of discrimination, mere disagreement with the employer's charges, and attacks on the adequacy of the investigation do not, standing alone, establish pretext. *Clark*, 544 S.W.3d at 792 (an employee's "denials are insufficient to create a fact issue as to causation," because the question "is whether the employer's perception of the problems—accurate or not—was the real reason for termination"). Comparators must be nearly identical. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008) ("The situations and conduct of the employees in question must be 'nearly identical.'") (quoting *Ysleta Indep. Sch. Dist. v.*

*Monarrez*, 177 S.W.3d 915, 917–18 (Tex. 2005)); *Goodlett v. Northeast Indep. Sch. Dist.*, No. 04-20-00203-CV, 2021 WL 2117927, *5 (Tex. App.—San Antonio May 26, 2021, no pet.) (mem. op.) (comparator must be "similarly situated" under "nearly identical circumstances") (*quoting* Monarrez*, 177 S.W.3d at 917); *Tex. Health & Hum. Servs. Comm'n v. De La Cruz*, No. 13-21-00082-CV, 2023 WL 2422501, *7 (Tex. App.—Corpus Christi–Edinburg Mar. 9, 2023, no pet.) (mem. op.) ("The employees' respective situation and conduct must be 'nearly identical.'") (quoting *AutoZone*, 272 S.W.3d at 594).

The comparator evidence is contested, and the nearly-identical fit is weak. The stronger evidence is the 2023 integrity investigation. A primary stated basis for Esquerra's discipline was the falsification of Notices of Leave. The City's own integrity office found that falsification allegation against Sheppard, not Esquerra, and Esquerra signed none of the notices. From that, a factfinder could reasonably infer that the proffered falsification rationale was pretextual. That inference is more than a scintilla of evidence, and it does not depend on the weaker comparator proof. We affirm the denial of the race discrimination claim.

## D. Sex Discrimination

The sex discrimination claim proceeds under the same framework and the same articulated reasons, again on the no-evidence ground as to pretext. Esquerra's sex-specific evidence is that the City replaced him with a female employee, Veronica Guitron, after his termination. The prima facie case raises a reasonable inference of discrimination not from the fact of replacement standing alone, but because eliminating the most common nondiscriminatory reasons for the employer's action presumes that the action, if otherwise unexplained, was "more likely than not based on the consideration of impermissible factors." *Garcia*, 372 S.W.3d at 634 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Whatever the independent force of the replacement evidence,

the integrity-investigation evidence already discussed bears with equal weight on the sex discrimination claim and raises a fact issue on pretext. We affirm the denial of the sex discrimination claim.

### E. Hostile Work Environment

A hostile-work-environment claim requires membership in a protected group; unwelcome harassment based on sex; harassment affecting a term, condition, or privilege of employment, judged as severe or pervasive both objectively and subjectively; and, for co-worker harassment, it requires employer knowledge and a failure to remediate. *Clark*, 544 S.W.3d at 771 (harassment must be "so severe or pervasive as to alter the conditions of" employment "and create a hostile work environment"); *Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 881 (Tex. 2024) (reaffirming the severe-or-pervasive requirement). For supervisor harassment, the employer may assert the affirmative defense that it exercised reasonable care to prevent and correct harassment and that the employee unreasonably failed to use the employer's complaint procedure. *City of Waco v. Lopez*, 259 S.W.3d 147, 156 n.3 (Tex. 2008) (noting the affirmative defense where the employer "exercised reasonable care to prevent and correct promptly the harassing behavior" and the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer").

The City argues that the incidents were too few and sporadic over a span of years to be severe or pervasive, that many were directed at others, and that Esquerra failed to use the City's anti-harassment procedure. Esquerra points to a pattern of conduct by Castillo: vulgar, sexual remarks, simulated humping, crotch gestures, the circulation of sexually explicit images, and physical touching, much of the verbal and visual conduct occurring in front of other employees and Castillo's superiors, and Esquerra asserts that he raised the hostile-work-environment issue

during the integrity investigation. Severity and pervasiveness present a fact-intensive question, and the conduct Esquerra describes, credited as it must be on this review, is well beyond sporadic teasing that could support a finding of a hostile work environment. *Fossil Grp.*, 691 S.W.3d at 880-81. The affirmative defense is the City's traditional ground, so the City must conclusively establish both prongs; Esquerra's evidence that he raised the hostile-work-environment issue/concern through the integrity process creates a fact issue on whether he unreasonably failed to use the complaint mechanism. The timeliness overlay applies to the older conduct, but on the merits the City did not establish entitlement to judgment, and we affirm the denial of the hostile-work-environment claim.

### F. Retaliation

A retaliation claim requires protected activity, an adverse employment action, and a causal link, and the causation standard is but-for. TEX. LAB. CODE § 21.055; *Clark*, 544 S.W.3d at 782. Opposing a discriminatory practice, making a charge, or filing a complaint is protected activity. *Clark*, 544 S.W.3d at 786 ("An employee engages in a protected activity by, among other things, filing an internal complaint, opposing a discriminatory practice, or making a charge of discrimination with the EEOC."). The City contends Esquerra never engaged in protected activity because he never framed any complaint as opposing race or sex discrimination; that the decisionmaker knew of no complaint; that there is no but-for causation; and that the comparators are ill-fitting.

The protected-activity element is contested but not entirely without support. Esquerra's evidence that he raised Castillo's sexual conduct and a hostile work environment during the integrity process bears both on protected activity and on the decisionmaker's knowledge through that process. Causation is a closer question. Temporal proximity alone will not carry it: mere

temporal proximity between the adverse action and the protected conduct is insufficient to show a causal link at the summary-judgment stage. *Gumpert v. ABF Freight Sys., Inc.*, 293 S.W.3d 256, 262 (Tex. App.—Dallas 2009, pet. denied). The roughly ten-day interval between Esquerra's complaint and his forced resignation therefore does not, standing alone, raise a fact issue. But causation does not rest on proximity alone. The decisionmaker's knowledge of the complaint through the integrity process taken together with the post-investigation pattern in which Esquerra applied for other City positions yet was never interviewed or rehired, supplies more than a scintilla of evidence on causation when the evidence is viewed in Esquerra's favor. We affirm the denial of the retaliation claim.

## III. CONCLUSION

On de novo review, the City did not carry its summary-judgment burden under either standard on any appealed claim. It did not conclusively negate an element or conclusively establish an affirmative defense where it proceeded on the traditional ground, and Esquerra produced more than a scintilla of evidence on the elements the City challenged on the no-evidence ground. A genuine fact issue exists on at least one challenged element of each appealed claim, and immunity was not established as a matter of law. We affirm the trial court's order denying the City's motion for summary judgment as to the race-discrimination, sex-discrimination, hostile-work-environment, and retaliation claims, and we remand for further proceedings consistent with this opinion.

H. Todd McCray, Justice